# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | **Case No. 08-12687 (PJW)** |
| **DBSI INC.,** *et al.*, | ) | |
| | ) | **Chapter 11** |
| **Debtors.** | ) | |
| _____ | ) | |
| | ) | |
| **JAMES R. ZAZZALI, as Litigation** | ) | |
| **Trustee for the DBSI Estate** | ) | |
| **Litigation Trust,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Adv. No. 12-06056-TLM** |
| | ) | |
| **MARTY GOLDSMITH and JOHN** | ) | |
| **DOE 1-10,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## MEMORANDUM OF DECISION
_____

## BACKGROUND

### A.   The Parties

Plaintiff James Zazzali (hereafter "Trustee") is the trustee for several jointly

administered chapter 11 estates, collectively identified by the name "DBSI, Inc., *et*

*al.*" in the above caption.  These pending chapter 11 cases were commenced in the

Bankruptcy Court for the District of Delaware in 2008.  Under an October 2010,

confirmed "joint chapter 11 plan" for the estates, and appropriate orders, a "DBSI

MEMORANDUM OF DECISION - 1

Estate Litigation Trust" was created, and Trustee was appointed to serve as trustee of that trust, and to prosecute certain causes of action.[1]

Marty Goldsmith is an individual living in Idaho. Trustee commenced this adversary proceeding against Goldsmith in the Delaware Bankruptcy Court. Goldsmith sought, and obtained, that court's order transferring venue of this adversary proceeding to the District of Idaho. *See* Doc. No. 1-21.[2]

### B.    The Action

Trustee initiated this adversary proceeding against Goldsmith in an attempt to avoid certain alleged actually and constructively fraudulent transfers made by certain of the DBSI-affiliated debtors and consolidated non-debtors (collectively herein referred to as "Debtor" in the singular for ease of exposition).

The action asserts fraudulent transfer causes under § 548 of Title 11, U.S. Code (the "Bankruptcy Code"), and under Chapter 9 of Title 55 of the Idaho Code

---

[1] By way of background, Trustee's submissions explain that the estates of DBSI, Inc. and certain "affiliated debtors" and certain "Consolidated Non-Debtors" are jointly administered. At hearing, his counsel represented that there are 172 debtors and 900 entities so joined. The Litigation Trust is authorized to pursue avoidance actions, and counsel stated at hearing that several hundred adversary proceedings have been filed. Among the reported decisions related to DBSI and its activities is *Zazzali v. Mott (In re DBSI, Inc.)*, 447 B.R. 243 (Bankr. D. Del. 2011), which notes its finding that "'DBSI ran its business and entities as a unified enterprise under common ownership and control' with a 'small group of insiders [that] employed that control to raise cash, commingle it, and distribute it as needs presented.'" Accordingly, the court approved substantive consolidation of the DBSI debtors along with certain non-debtors *nunc pro tunc* to November 10, 2008, four days after the date DBSI and certain of its affiliates filed chapter 11 petitions. *Id.* at 245-246.

[2] References to pleadings and papers of record in this action are to the appropriate document numbers on the Idaho docket ("Doc. No."). By reason of the transfer of venue, Doc. No. 1 on the Idaho docket contains, as attachments, the pleadings and papers filed while the matter was before the Delaware Bankruptcy Court, including the referenced order transferring venue.

MEMORANDUM OF DECISION - 2

by means of § 544(b) of the Bankruptcy Code.  *See* Doc. No. 1-17 ("Amended

Complaint") at Counts 1–6.  Trustee also seeks recovery from Goldsmith under a

theory of unjust enrichment.  *See id.* at Count 7.  Trustee argues under these causes

of action that Goldsmith received about $29 million in exchange for purposefully

selling substantially overvalued real property located in Ada County, Idaho.

Trustee filed the Amended Complaint while the matter was pending in

Delaware.  Goldsmith had there answered the initial complaint but had not, at the

time of venue transfer, answered the Amended Complaint.  The parties agreed that

the Amended Complaint could be later answered and Goldsmith filed his answer

on November 30, 2012.  Doc. No. 8.

### 1.    Jurisdiction

Goldsmith's answer denied Trustee's jurisdictional allegation.  Doc. No. 8

at 3, ¶ 3;[3] *see also id.* at 26 (Affirmative Defense No. 9 of 29, stating "This Court

lacks jurisdiction over Plaintiff's claims in this action.").  However, Goldsmith's

answer also states that Trustee's Counts 1 through 6 "are core proceedings[.]"  *Id.*

at 4, ¶ 5.  Given the structure of 28 U.S.C. § 157(b) and § 1334, as judicially

construed, this express acknowledgment is tantamount to an admission of subject

matter jurisdiction, notwithstanding the denials.  The Court also notes that, in

seeking dismissal, Goldsmith has raised no jurisdictional issue.  *Cf.* Rule 12(b)(1).

---

[3]  Goldsmith's answer at ¶ 3 initially argues that Trustee's jurisdictional allegation "states
a legal conclusion or principle of law to which no response is required" before then denying it.
Of course, responses to jurisdictional allegations are required.  *See* Bankruptcy Rule 7012(b).

MEMORANDUM OF DECISION - 3

If not confusing enough, Goldsmith also in ¶ 5 characterized both the federal and state fraudulent transfer counts as "core proceedings," while asserting that the unjust enrichment claim in Count 7 of the Amended Complaint is non-core.  Immediately upon so doing, Goldsmith expressly and unambiguously "does consent to a final judgment being entered by [this Court]."  Doc. No. 8 at 4, ¶ 5.

The Court could view this "consent" as obviating any issues arising under *Executive Benefits Ins. Agency, Inc. v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553 (9th Cir. 2012).  It declines to do so on this record.  In addition to the ambiguity spawned by Goldsmith's pleading, the Court notes that the answer was filed on November 30, 2012, and *Bellingham Ins. Agency* was issued by the Ninth Circuit on December 4, 2012.

Under 28 U.S.C. § 157(b)(3), this Court concludes that Counts 1–6 are "core proceedings."  *See* § 157(b)(2)(H).[4]  However, given *Bellingham Ins. Agency* and a lack of present showing that Goldsmith is a creditor of Debtor, *see* 702 F.3d at 565, this Court would appear to lack the Constitutional authority to enter a final judgment on those core proceedings absent Goldsmith's consent, *see id.* at 566–67.

These are not matters where ambiguity or imprecision is tolerable.  The Court will require Goldsmith to file an express clarification of its jurisdictional position, and to do so within fourteen days of entry of an order on this decision.

---

[4]  The Court concludes Count 7 is a non-core, related-to proceeding.

MEMORANDUM OF DECISION - 4

### C.    The Motions

On the same date he filed his answer, Goldsmith filed Defendant's Motion

for Judgment on the Pleadings, Doc. No. 9 ("Rule 12(c) Motion"),[5] and

Defendant's Motion to Dismiss for Failure to Join a Party Pursuant to Rule 19,

Doc. No. 10 ("Rule 12(b)(7) Motion").[6]  The motions were heard on January 22,

2013, and taken under advisement.  After considering carefully the parties' oral

arguments and briefs, the Amended Complaint, and applicable authorities, the

Court determines that both motions will be denied.

## DISCUSSION AND DISPOSITION

### A.    Authorities

#### 1.    Rule 12(c) Motion

Rule 12(c) provides: "After the pleadings are closed—but early enough not

to delay trial—a party may move for judgment on the pleadings."  In effect, the

motion is identical to one under Rule 12(b)(6) for failure to state a claim, the

difference being that a Rule 12(c) motion is brought after the pleadings are closed.

*See* Rule 12(b) ("A motion asserting any of these defenses must be made before

---

[5]  Under Fed. R. Bankr. P. 7012(b), the provisions of Fed. R. Civ. P. 12(b) through (i) apply in adversary proceedings.  The Court will adopt the approach taken by Trustee and Goldsmith and their counsel, and refer to "Rule 12" for ease of discussion.  Similarly, it will refer to Rule 19 in connection with the other motion at issue, though the provisions of Fed. R. Civ. P. 19 are applicable only through incorporation under Fed. R. Bankr. P. 7019.  Thus, references in this Decision to "Rule" are to the Federal Rules of Civil Procedure, and any further references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

[6]  As discussed below, this motion seeks dismissal, effectively under Rule 12(b)(7), on the basis that Trustee allegedly failed to join an indispensable or required party, as addressed in Rule 19.

MEMORANDUM OF DECISION - 5

pleading if a responsive pleading is allowed."); *see also Dworkin v. Hustler*

*Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) ("The principal difference

between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing.

Because the motions are functionally identical, the same standard of review

applicable to a Rule 12(b) motion applies to its Rule 12(c) analog."); *United States*

*ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir.

2011) (recognizing standards governing such motions are "functionally identical").

For a Rule 12(c) motion, the allegations of the nonmoving party are

accepted as true. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d

1542, 1550 (9th Cir. 1989). Further, a court evaluating a Rule 12(c) motion must

construe all factual allegations in a complaint in the light most favorable to the

nonmoving plaintiff. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). In so

doing, the court must find that the plaintiff pleads "sufficient facts to allow the

Court to draw a reasonable inference of misconduct, but the Court is not required

'to accept as true a legal conclusion couched as a factual allegation.'" *Harris v.*

*County of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009), and stating that the *Iqbal* standard also applies to an

analysis of the pleadings under a motion under Rule 12(c)).

With these standards governing interpretation and construction of the

complaint in mind, "Judgment on the pleadings under Rule 12(c) is proper when

MEMORANDUM OF DECISION - 6

the moving party establishes on the face of the pleadings that there is no material issue of fact and that the moving party is entitled to a judgment as a matter of law." *Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.*, 644 F.3d 934, 937 n.1 (9th Cir. 2011) (citing *Hal Roach Studios*, 896 F.2d at 1550)).

Because this analysis applies to each cause of action stated in the pleadings, the Court must examine each claim to determine whether the plaintiff pleads facts that, if true, satisfy the elements of that claim. *See, e.g., Davies v. Deutsch Bank Int'l Trust Co. (In re Davies)*, 2012 WL 370689 (9th Cir. BAP 2012) (examining the elements of each of the complaint's claims under the Rule 12(c) standards).[7] However, in doing so, the Court need not, and herein will not, discourse on every element of each cause of action; it may—and will—limit its review to those aspects of the Amended Complaint specifically raised by the moving party as requiring dismissal.

It is easy enough to find and articulate the Rule 12(c) standards. But the

---

[7] Rule 12(d) provides: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." The Court has determined, in the exercise of its discretion, that it will not consider the additional matters proffered by Goldsmith (*i.e.*, a "supplemental" statement of facts and affidavit of counsel), nor various asserted or alleged facts counsel referred to at the hearing. It chooses, instead, to limit its analysis to the pleadings, in order to determine if this is the unusual case that warrants a judgment of dismissal on those documents alone. It has, however, considered the "illustrative exhibit" used by both counsel at hearing in their attempts to explain how their arguments fit within the complex and complicated history of DBSI *et al.* and the instant transactions, but solely in order to assess and weigh their arguments regarding the pleadings.

MEMORANDUM OF DECISION - 7

utility and purpose of the Rule is also important.  The "Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties and a judgment on the merits can be achieved by focusing on the content of the competing pleadings[.]"  5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1367 (3d. ed. 2004) at 206–07 (footnotes omitted).  A motion for a judgment on the pleadings is only proper when all the material allegations of fact, as contained in the pleadings, are not at issue, leaving only questions of law to be decided.  *Id.* at 207–08.  "[I]f the pleadings do not resolve all of the factual issues in the case, a trial on the merits would be more appropriate than an attempt at resolution of the case on a Rule 12(c) motion."  *Id.* at 216.  "Although the [Rule 12(c)] motion may be helpful in disposing of cases in which there is no substantive dispute that warrants the litigants and the court proceeding further, thereby easing crowded trial dockets in the federal district courts, hasty or imprudent use of this summary procedure by the court violates the policy of ensuring to each litigant a full and fair hearing on the merits of his or her claim or defense."  *Id.* § 1368 at 222–23.

### 2.    Rule 12(b)(7) Motion

In considering a motion for dismissal for failing to join a party under Rule 19, as permitted under Rule 12(b)(7), the court must also, as with Rule 12(c), accept as true all the allegations in the complaint, and must draw all reasonable

MEMORANDUM OF DECISION - 8

inferences in the plaintiff's favor.  *See Transmission Agency of N. Cal. v. Sierra Pac. Power Co.*, 295 F.3d 918, 923 (9th Cir. 2002).  Under Rule 19:

> **(a) Persons Required to Be Joined if Feasible.**
>
> **(1)** *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
>> **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or
>>
>> **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>
>>> **(i)** as a practical matter impair or impede the person's ability to protect the interest; or
>>>
>>> **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

The burden of proving that a party is a necessary to a proceeding is on the party raising the defense.  *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

"There is no precise formula for determining whether a particular non-party is necessary to an action.  The determination is heavily influenced by the facts and circumstances of each case."  *Confederated Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1498 (9th Cir. 1991) (citations and quotations omitted).  To determine whether a party should be joined under Rule 19, the Court engages in "three successive inquiries":

> First, the court must determine whether a nonparty should be joined under Rule 19(a).  If an absentee is a necessary party under Rule 19(a), "the second stage is for the court to determine whether it is feasible to

MEMORANDUM OF DECISION - 9

order that the absentee be joined." [Third,] [i]f joinder is not feasible, the
court must determine whether the case can proceed without the absentee
or whether the case should be dismissed because the absentee is an
indispensable party. An indispensable party is one who "not only [has]
an interest in the controversy, but [has] an interest of such a nature that
a final decree cannot be made without either affecting that interest, or
leaving the controversy in such a condition that its final termination may
be wholly inconsistent with equity and good conscience."

*Knox v. U.S. Dept. of Interior*, 759 F. Supp. 2d 1223, 1235 (D. Idaho 2010)

(quoting *EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010))

(citations omitted). Thus, dismissal of a case is required only if the party is

necessary, cannot be joined, *and* is indispensable. *See id.*; *see also* Rule 19(b).

### B.    Application of authorities

As discussed, the concept behind a Rule 12(c) motion, like its counterpart,

Rule 12(b)(6), is to allow the Court in certain limited and exceptional

circumstances, to resolve a matter on pleadings only, avoiding the cost and

expense of trial.[8] It is a tool that has particular value where there is a fatal flaw in

the pleadings themselves.[9] However, the flaw must be found in the complaint, and

---

[8] "When a federal court reviews the sufficiency of a complaint, before the reception of
any evidence either by affidavit or admissions, its task is necessarily a limited one." *Scheuer v.
Rhodes*, 416 U.S. 232, 236 (1974). Dismissal is proper where there is either a "lack of a
cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal
theory." *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121 (9th Cir. 2008)
(citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

[9] For example, as held in *Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir. 1980), "If
the running of the statute [of limitations] is apparent on the face of the complaint, the defense
may be raised by a [Rule 12(c)] motion to dismiss." *Id.* at 682; *see also id.* ("When a motion to
dismiss is based on the running of the statute of limitations, it can be granted only if the assertions
of the complaint, read with the required liberality, would not permit the plaintiff to prove that the
statute was tolled."). Here, Goldsmith initially raised a statute of limitations issue, evidently

(continued...)

MEMORANDUM OF DECISION - 10

not by reason of affirmative defenses that a defendant might raise. *McCalden v. Cal. Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990) ("For a complaint to be dismissed because the allegations give rise to an affirmative defense[,] the defense clearly must appear on the face of the pleading.").[10]

All of which indicates that, once the allegations of the complaint are accepted as true and those allegations and all inferences are construed most favorably to the plaintiff, situations where the complaint internally manifests its own fatal flaw or omission are fairly rare. Often, these contentions of defects in a plaintiff's case are better reserved until facts are more fully developed, and a motion for summary judgment might be brought.[11]

Focusing on the motions in such a way leads to two observations of

_____

[9](...continued)
confusing the look-back periods under the fraudulent transfer provisions of the Bankruptcy Code and Idaho Code with the statute of limitations on commencement of trustees' actions under § 546(a). At hearing, Goldsmith abandoned these contentions, as well as dismissal arguments based on an alleged failure of the pleaded facts to establish "insolvency."

[10]  Complaints need not anticipate affirmative defenses and attempt to defeat them. That said, "[a] plaintiff whose [own] allegations show that there is an airtight defense has pleaded himself out of court, and the judge may dismiss the suit on the pleadings under Rule 12(c)." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012).

[11]  Before notice pleading, a party could demur to the sufficiency of a complaint, and Rule 12(c) has been characterized as "little more than a relic of [those] common law and code eras" before the use of Rules 12 and, particularly, 56 developed. Wright & Miller, *supra*, § 1369 at 265. This is not to say, of course, that summary judgment motions should be improvidently brought. *See Boise City/Ada County Hous. Auth. v. O'Brien (In re O'Brien)*, 2011 WL 1457304 at *3–4 (Bankr. D. Idaho Apr. 15, 2011) (noting summary judgment is inapt to resolve disputed issues of intent); *Thorien v. Baro Enters. (In re Thorien)*, 349 B.R. 59, 64 (Bankr. D. Idaho 2006) (considering a Rule 12(b)(6) motion as a motion for summary judgment in a fraudulent transfer adversary proceeding and determining that the motion was not well taken, stating: "Summary judgment is best designed for cases where the parties agree on the operative facts, or at least where no credible factual issue is posited, and where the parties agree that only legal issues are presented. This is not such a case.").

MEMORANDUM OF DECISION - 11

consequence.  First, the facts are established by Trustee's allegations, construed most favorably in his favor.  Thus, this Court need not recite at length in this Decision all the intricate and complex facts as laid out in the Amended Complaint. The Complaint speaks for itself, and a more compendious version will suffice for this Decision.[12]  Second, because the Court determines that these motions will be denied, extended discussion of the facts, or of the theories, inferences, arguments, etc. engendered or implicated thereby, is inappropriate.  Much as the case where a motion for summary judgment is denied, a court that will later conduct a bench trial in that same cause is well advised to keep discussion of facts in its ruling to a minimum, thus avoiding commentary or characterization that might lead the parties to assume (erroneously, of course) that decisions have been reached on the facts prior to the presentation of evidence.

## 1.    Facts

The alleged fraudulent transfers and the claim for unjust enrichment stem from the sale of approximately 180 acres of real property in Ada County, Idaho, previously owned by Goldsmith.  The property is generally described as "Tanana Valley" and it was bare ground (with the exception of a single 12,930 square foot structure on 5 acres) intended for development.  Goldsmith purchased the property in October 2005 for $19.2 million.  Six months later, Goldsmith commenced a

---

[12]  The Court will also, therefore, eschew citation to the Amended Complaint in all situations other than direct quotation.

MEMORANDUM OF DECISION - 12

transaction to sell the property under a real estate purchase and sale agreement

("PSA").  That agreement had an original purchase price of $35.8 million, but the

price was ultimately reduced to $28.8 million through an amended agreement.

Goldsmith transferred the real estate in exchange for funds ultimately coming from

Debtor.

The gist of the Amended Complaint is thus clear.  Trustee contends Debtor

paid Goldsmith almost $29 million for property worth substantially less.  But the

39-page, 169 paragraph Amended Complaint reflects a complex series of events.

### a.    Kastera, LLC and the "Initial Transfer"

On April 17, 2006, Goldsmith and Kastera, LLC ("Kastera")—an entity

organized by Thomas Var Reeve and Douglas Swenson (both members of

Debtors' senior management)[13]—negotiated and executed the PSA to transfer

Tanana Valley for $35.8 million.  At the time, Kastera gave Goldsmith a

promissory note representing $3.4 million of the purchase price as an earnest

money deposit.  Douglas Swenson and Thomas Var Reeve personally guaranteed

the note.

On October 10, 2006, DBSI 2006 Land Opportunity Fund, LLC ("LOF"), a

consolidated DBSI debtor, funded $3 million of the $3.4 million earnest money

deposit towards the purchase of Tanana Valley.  At some point in October 2006,

---

[13]  The parties are in agreement that Kastera LLC is not a DBSI debtor or consolidated
non-debtor.

MEMORANDUM OF DECISION - 13

Goldsmith received this $3 million.  Trustee asserts the $3 million went from LOF
to Kastera to Goldsmith, and Kastera was a mere conduit.  This $3 million transfer
from LOF to Goldsmith is the first transfer the Trustee seeks to avoid as fraudulent
("Initial Transfer").[14]

### b.    Analysis, price changes, and valuations

Over the next few months, multiple financial projections were conducted to
determine the accuracy of the valuation and related feasibility of the negotiated
purchase of Tanana Valley.  Ultimately, Kastera and Goldsmith agreed on a
revised purchase price of $28.8 million. After the $3.4 million earnest money
deposit, an additional $25.4 million was needed to complete the purchase.  This
purchase price required an appraisal of at least $29.9 million to support the
necessary financing.

Williams Appraisal, Inc., conducted an appraisal of Tanana Valley and
ultimately valued it at $31 million.  The Amended Complaint alleges the appraisal
(a) was knowingly inflated due to the influence of Douglas Swenson;
(b) inappropriately compared this parcel to smaller properties with higher per-acre
values; and (c) unacceptably relied on hypothetical conditions, assumptions, or
qualifications.

The Williams appraisal also included an alternative valuation—one

---

[14]  The Amended Complaint appears to seek to avoid the entire $3.4 million.  However,
at oral argument on January 22, 2013, Trustee clarified he only seeks to recover the $3 million
transferred by LOF to Goldsmith.

MEMORANDUM OF DECISION - 14

conducted using a technique commonly used in development projects, such as the

one here.  When using that valuation, Tanana Valley was valued at approximately

$18.5 million.  This was similar to the value Joe Swenson, Kastera's CFO, initially

placed on the property, before he was pressured by Douglas Swenson and Thomas

Var Reeve to arrive at a higher amount, and it was similar to the $19.2 million that

Goldsmith originally paid for the property.  However, the Williams appraisal

rejected this approach and arrived instead at the $31 million estimate.

### c.     DBSI Tanana Valley, LLC and the "Closing Transfer"

On February 22, 2007, Douglas Swenson formed DBSI Tanana Valley,

LLC, ("TVLLC") with DBSI Housing, Inc., as its sole member.[15]  The next day,

TVLLC executed a loan agreement with DBSI 2006 Secured Notes Corp.

("Secured Notes"), a DBSI debtor, for $26.35 million.  At that time, Secured Notes

transferred $26.35 million to DBSI Redemption Reserve ("Redemption Reserve"),

a consolidated non-debtor.  On February 26, 2007, Redemption Reserve

transferred $26.35 million to TitleOne Corporation, the closing agent for the sale

and purchase of Tanana Valley.  Of this amount, $25.4 million was for the benefit

of Goldsmith.[16]  This $25.4 million is the second transfer Trustee seeks to avoid as

fraudulent ("Closing Transfer").

---

[15]  At the January 22, 2013 hearing, Trustee also clarified—and the parties agree—that TVLLC, like Kastera, is not a DBSI debtor or a consolidated non-debtor.

[16]  The Amended Complaint does not plead facts explaining what the other $950,000 was for, but Trustee does not seek to recover from Goldsmith this additional amount.

MEMORANDUM OF DECISION - 15

### d.    Post-transfer activity

After TVLLC's acquisition of Tanana Valley, portions of the property were leased to other related DBSI entities[17] and then eventually sold for amounts significantly higher than what TVLLC had paid for it based on a pro-rata allocation of the TVLLC purchase price to the sold lots.  The Amended Complaint alleges that the acquisition of Tanana Valley from Goldsmith, at an inflated price, and the subsequent resale of the lots to investors, at an even greater price, was "necessary to perpetuate [Debtor's] fraudulent scheme":

> Tanana Valley was used as TIC inventory and sold to new investors, with the proceeds used, in part, to pay off old investors.  By materially overpaying for Tanana Valley, and then using the property as collateral for future "borrowing"—based on ever increasing and illusory "valuations"—the Debtors incurred even more debts that were far beyond their ability to pay, to the detriment of the Debtors' present and future creditors.

Am. Compl. ¶ 97.  Still, whether the acquisition and use of Tanana Valley was part of an alleged Ponzi scheme by DBSI and related entities is primarily contextual; the causes of action before the Court involve whether or not the Initial Transfer and the Closing Transfer are avoidable under the suggested provisions of the Bankruptcy Code and the Idaho Code, or represent actionable unjust enrichment.

---

[17]   Trustee alleges Debtor sold tenant-in-common ("TIC") interests in real property as a means of funding an ever-spiraling Ponzi scheme, and the transactions, including those in this case, were structured to ensure the flow of funds into such a scheme.  Here, though, leases were used (and made to five DBSI-controlled LLC's) "because zoning restrictions on Tanana Valley prevented DBSI from selling fee simple TIC interests in the site."  Am. Compl. at ¶ 87.

MEMORANDUM OF DECISION - 16

### 2 .   Disposition

#### a.       Rule 12(b)(7) Motion

Goldsmith argues that TVLLC is an indispensable party to this adversary

proceeding.  His arguments are set out in briefing, and were presented orally at

hearing.[18]  Trustee counters that no joinder of any other parties is required under

the facts as established by the Amended Complaint.  As to the Initial Transfer,

Trustee argues Kastera was a mere conduit for LOF's funding.  As to the Closing

Transfer, Trustee argues the subject funds went through neither Kastera's nor

TVLLC's hands, but were funded by Secured Notes and paid via Redemption

Reserve into a closing escrow where they went to Goldsmith.  Trustee essentially

argues that Goldsmith conflates Trustee's avoidance of the transfer of funds with

the transfer by Goldsmith of the real property to TVLLC.  Though Trustee appears

to concede the transfer by Goldsmith of the real estate may perhaps be relevant to

certain aspects of the case, or certain defenses, he contends it is not part of his

avoidance causes of action.

The parties address not only elements of the causes of action, but also the

potential statutory rights of Trustee to recovery against initial and subsequent

---

[18]   In his briefing, Goldsmith also alleges Kastera, and the DBSI-controlled "lessees" and
unknown TIC investors are, in addition to TVLLC, necessary parties because "all of these entities
claim an interest in the Tanana Valley Property."  Doc. No. 11-2 at p. 9.  However, after Trustee's
briefing and clarification as to which transfers were sought to be avoided, Goldsmith seemingly
recognized that it was not the transfer of the Tanana Valley real property, but instead the transfer
of money to Goldsmith under the Initial Transfer and the Closing Transfer, that the Trustee was
seeking to avoid.  At oral argument, Goldsmith only argued that TVLLC is a necessary party
whether on its own account or by reason of receiving Kastera's rights under the PSA.

MEMORANDUM OF DECISION - 17

transferees.  In the Ninth Circuit, "a transferee is one, who at a minimum, has dominion over the money or other asset, the right to put the money to one's own purposes."  *Abele v. Modern Fin. Plans Servs., Inc. (In re Cohen)*, 300 F.3d 1097, 1102 (9th Cir. 2002) (citations omitted).  The "dominion test" focuses on "whether an entity had legal authority over the money and the right to use the money however it wished."  *Universal Serv. Admin. Co. v. Post-Confirmation Comm. (In re Incomnet, Inc.),* 463 F.3d 1064, 1070 (9th Cir. 2006).  This right is measured at the time the transfer is made, not at the time the trustee seeks to avoid such transfer.  *See id.*

At this stage, Trustee has sufficiently alleged facts supporting maintenance of this action without joining TVLLC.  First, Trustee adequately alleged Kastera/TVLLC was a conduit for the LOF funds in the Initial Transfer, and TVLLC and the escrow a conduit for the Secured Notes funds paid Goldsmith in the Closing Transfer.[19]  Second, even if Goldsmith's argument about Kastera/TVLLC being more than a mere conduit is ultimately provable, this does not necessarily mean Kastera/TVLLC need be joined before Trustee seeks relief from Goldsmith as a subsequent transferee: "[A] trustee is not required to avoid the initial transfer from the initial transferee before seeking recovery from subsequent

---

[19]  That the Closing Transfer went through the title company is also of no moment to the Rule 12(b)(7) argument.  When an escrow company is used as an intermediary between two contracting parties, the company is treated as the agent of both parties, subject to the terms of the escrow agreement.  *Foreman v. Todd*, 364 P.2d 365, 366–67 (Idaho 1961).  Generally, the escrow agent merely acts as "the conduit used in the transaction for convenience and safety," and is disregarded.  *Id.* at 367.

MEMORANDUM OF DECISION - 18

transferees under § 550(a)(2)." *Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 735 (9th Cir. BAP 2008).

For joinder under Rule 19(a)(1)(A), the Court's inquiry is limited to whether the court can grant relief to persons already parties to the action. *Official Comm. Of Unsecured Creditors v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*, 394 B.R. 721, 744 (S.D.N.Y. 2008). Whether a court's decision may affect an absent party is not material for this analysis. *Id.* (citing *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 405 (3d Cir. 1993)). In this case, Trustee may obtain complete relief by recovering the value of Debtor's payments to Goldsmith under § 550(a), regardless of whether Goldsmith was an initial or subsequent transferee.

Regarding joinder under Rule 19(a)(1)(B)(i), this Court is only concerned about whether an absent initial transferee would be prejudiced if the litigation proceeds in its absence. *Fabrikant*, 394 B.R. at 744. Such prejudice only arises when the absentee has a "legally protected interest relating to the subject matter of the action" that would be directly and immediately impacted by that action. *Id.* (quoting *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983)). Generally, "[a] transferee that retains title to or an interest in the property conveyed is a necessary party to the fraudulent transfer action" because the action will affect the transferee's title or interest. *Id.* Consequently, "an earlier transferee who has parted with all interest in the transferred property is not necessary in a suit against a subsequent transferee." *Id.* Thus in this instance, the

MEMORANDUM OF DECISION - 19

Court must be convinced that a putative initial transferee retained title to, or an interest in, the conveyed property that is the subject of this fraudulent transfer action. At this stage of the litigation, the facts as pleaded do not suggest an unjoined party holds an interest that would be impaired.

Goldsmith also seems to argue he has potential causes of action against TVLLC, should Trustee prevail. However, Rule 19(a)(1)(B)(ii) protects an existing party like Goldsmith from "substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the interest [claimed by the absent party]." The prospect of additional litigation is not enough. Rule 19(a)(1)(B)(ii) "is intended to protect the defendant against inconsistent obligations, not inconsistent adjudications. Thus, for example, where the plaintiff sues one of two tortfeasors, the defendant does not face 'multiple liability' because it may lose in the original action and then lose in the subsequent action for contribution against the other joint tortfeasor." *Fabrikant*, 394 B.R. at 745 (citing *Janney Montgomery Scott,* 11 F.3d at 411; 4 Moore § 19.03[4][b], [d], [e] at 19-59 to 19-60, 19-63 to 19-64). Goldsmith might argue he has a cause of action <u>*against*</u> TVLLC, but has not established that he is exposed to an additional obligation <u>*to*</u> TVLLC.

> The determination [under Rule 19] is heavily influenced by the facts and circumstances of each case. It is a misapplication of Rule 19(a) to add parties who are neither necessary nor indispensable, who are not essential for just adjudication, and who have a separate cause of action[.] The absence of an entity that is separately or independently liable does not generally impede the defense of present defendants.

*Woods v. Asset Res.*, 2006 WL 3782704 at *11 (E.D. Cal. Dec. 21, 2006) (citations

MEMORANDUM OF DECISION - 20

omitted).

At bottom, "[t]he inquiry [under Rule 19] is a practical one and fact specific, and is designed to avoid the harsh results of rigid application. The moving party has the burden of persuasion in arguing for dismissal." *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992) (citation omitted). The burden has not been borne here. The Rule 12(b)(7) Motion will be denied.

### b.      The Rule 12(c) Motion

Goldsmith's briefing in support of the 12(c) Motion raised a number of issues in addition to the absence of Kastera or TVLLC already addressed. As noted above, he abandoned two issues at hearing: statute of limitations and insolvency. The Court now addresses the remaining issues.

### i.      Reasonably equivalent value[20]

Goldsmith contends all constructive fraud causes of action fail because he provided "reasonably equivalent value" in connection with both the initial Transfer and the Closing Transfer. Reasonably equivalent value is a question of fact, and is inappropriate for determination on a Rule 12(c) motion. *See Jordan v. Kroneberger (In re Jordan)*, 392 B.R. 428, 441–47 (Bankr. D. Idaho 2008). To the extent such a question is part of Trustee's pleading burden, as opposed to Goldsmith's defense, the Amended Complaint adequately alleges facts to satisfy the Rule 12(c) standards.

---

[20]   Doc. No. 9-2 at 13-15.

MEMORANDUM OF DECISION - 21

### ii.    TVLLC arguments[21]

Goldsmith raises several arguments premised on the assumption that TVLLC is the party making the transfer(s) underlying Trustee's avoidance claims. For example, Goldsmith questions whether there is an unsecured creditor of TVLLC, the existence of which is required under § 544(b) in order to utilize state transfer avoidance statutes. Goldsmith also questions whether any transfer could be in fraud of the transferor's "creditors" if there is but one creditor of TVLLC (alleged by Goldsmith to be Secured Notes) which creditor consented to the transaction. However, like the issue initially raised by Goldsmith involving TVLLC's insolvency, these arguments misapprehend the identity of the entities on whose behalf Trustee is authorized to bring actions under the confirmed DBSI plan and litigation trust.

### iii.    Unjust enrichment

Goldsmith also attacks Trustee's unjust enrichment count, arguing there was a contract between Goldsmith and TVLLC (as assignee of Kastera) and the presence of an express contract eliminates the ability to seek equitable relief in the form of unjust enrichment on an implied in law contract. *See also Gugino v. Kastera, LLC (In re Ricks)*, 433 B.R. 806, 832 (Bankr. D. Idaho 2010) (recognizing that unjust enrichment is not available if there is an express and

---

[21] Doc. No. 9-2 at 16 (retention of "benefit of the bargain" by TVLLC); 17-18 (existence of an unsecured creditor of TVLLC under § 554(b)); 18-19 (existence of only one creditor of TVLLC as to actual fraud counts).

MEMORANDUM OF DECISION - 22

enforceable contract between the parties).  Not only does this argument suffer from Goldsmith's confusion as to the relevant party (Trustee asserts LOF's and Secured Notes' rights, parties that had no contracts with Goldsmith), the Delaware Bankruptcy Court previously rejected similar arguments.  *See Zazzali v. AFA Fin. Grp.*, 2012 WL 4903593 at *3, *10 (Bank. D. Del. Aug. 28, 2012) (holding, consistent with earlier decisions on the same issue, that until there is proven to be an enforceable contract between the relevant parties, the alternative relief of unjust enrichment may be asserted).

Finally, Goldsmith's Answer, Doc. No. 8, denies and controverts innumerable factual allegations of the Amended Complaint.  As noted in the Court's discussion of Wright & Miller, *supra*, Rule 12(c) motions have little utility where factual disputes exist and the plaintiff's allegations must be accepted as true. Therefore, Goldsmith's Rule 12(c) Motion will be denied.

## CONCLUSION

Having evaluated the appropriate record and the contentions of the parties, the Court determines that the Rule 12(b)(7) Motion and the Rule 12(c) Motion will be denied.  Trustee may present proposed orders accordingly.  The Court will enter its own order regarding Goldsmith's obligation to clarify his jurisdictional position.

MEMORANDUM OF DECISION - 23

DATED:  April 11, 2013



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE