UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 08-12687-CSS |
| DBSI INC., *et al.*, ) | |
| ) | Chapter 11 |
| Debtor. ) | |
| _____ ) | |
| ) | |
| JAMES R. ZAZZALI, as Litigation ) | |
| Trustee for the DBSI Estate ) | |
| Litigation Trust, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. No. 12-06056-TLM |
| ) | |
| MARTY GOLDSMITH and JOHN ) | |
| DOE 1-10, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**MEMORANDUM OF DECISION
ON PLAINTIFF'S MOTION IN LIMINE, DOC. NO. 206; DEFENDANT'S
MOTION IN LIMINE, DOC. NO. 273; AND PLAINTIFF'S MOTION TO
DETERMINE ORDER OF TRIAL, DOC. NO. 277**

_____

**INTRODUCTION**

James R. Zazzali ("Plaintiff") is the litigation trustee for the DBSI Estate

Litigation Trust, and he filed this action against Marty Goldsmith ("Defendant") to

avoid an allegedly fraudulent transfer to Defendant of certain real property located

MEMORANDUM OF DECISION - 1

in Ada County, Idaho. Phase I of the trial in this matter—limited to the value of the subject property—was heard in September 2017, and the Court entered a ruling regarding valuation on November 8, 2017. The presently pending motions relate to phase II of the trial, which will commence on February 26, 2018.

> **A.     Motions in Limine, Doc. No. 206 (re: James Latta) and Doc. No. 273 (re: Gil Miller)**

On July 17, 2017, Plaintiff filed what it identified on the docket as a "Motion in Limine," Doc. No. 206. Most aspects of this motion were heard on August 14, 2017, and resolved in the Court's August 30, 2017 oral ruling. That ruling addressed multiple expert witnesses. The Court's discussion of authorities, findings, and conclusions in the August 30 oral ruling are incorporated fully by this reference.

Plaintiff's motion sought "to exclude the opinions and testimony" of several of Defendant's experts including James C. Latta. At the August 14, 2017 hearing, Plaintiff's motion as to Latta was reserved for argument prior to the commencement of the second phase of trial. That argument has now occurred.

Additionally, Defendant filed a similar motion in limine in regard to Plaintiff's expert, Gil Miller.

Among the authorities discussed in the August 30 oral ruling was the Advisory Committee Notes to Fed. R. Evid. 702, which state that "rejection of expert testimony is the exception rather than the rule." Those notes also explain

MEMORANDUM OF DECISION - 2

that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993)).

Similarly, the Court quoted *Sharp v. Chase Manhattan Bank USA, N.A. (In re Commercial Fin. Servs., Inc.)*, 350 B.R. 520, 528–29 (Bankr. N.D. Okla. 2005), to note that:

> Experts in disciplines that require the use of professional judgment are less likely candidates for exclusion [of testimony] because challenges may ultimately be viewed as matters in which reasonable experts may differ in exercising their judgment as to the appropriate methodology to employ or the appropriate variable to plug into a calculation. Such matters may be and should be explored and highlighted through cross-examination of the expert and presentation of contrary evidence, not at the preliminary admissibility stage. . . . [A] probing cross-examination and presentation of opposing experts and evidence will permit the fact-finder to judge the soundness of the expert's judgment, as well as the expert's credibility and potential bias, in order to assess how much weight to accord the expert's opinion.

Thus, especially when the trial will be before the bench and not a jury, the typical preference is to allow an expert witness to testify subject to the opposing party's questioning in aid of objection which may serve to limit the areas or subjects, if any, to which the witness may testify. Also, to the extent the witness is allowed to testify, cross-examination will point out the weaknesses or flaws in such testimony, and ultimately allow the Court to decide what weight to give it.

MEMORANDUM OF DECISION - 3

Finally, as the Court previously recognized, pretrial motions in limine are committed to the Court's "broad discretion." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152–53 (1999); *Estate of Barabin v. Asten Johnson Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc).

Under Fed. R. Evid. 702, one can testify as an expert and in the form of an opinion if the individual is qualified by reason of knowledge, skill, experience, training, or education. *See* Fed. R. Evid. 702. If so qualified, the expert is allowed to testify under the Rule, but—importantly—only "if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a)–(d).

Thus, Fed. R. Evid. 702(a) deals with the utility of the proffered expert testimony, *i.e.*, its ability to help the trier of fact understand the evidence or determine a fact, and Fed. R. Evid. 702(b)–(d) go to the reliability required in order to entertain that testimony.

With this background, significantly abbreviated from (but with full incorporation of) the Court's ruling last August, the Court will turn to the issues with Messrs. Latta and Miller. In doing so, the Court emphasizes that it has

MEMORANDUM OF DECISION - 4

considered all the arguments advanced, even if an argument is not specifically or extensively discussed.

### 1. Latta

Latta is a banker with significant professional experience. His qualifications are set out in his letter report, Doc. No. 206-10. He reviewed loan documents and closing documents involved in the transaction that is the crux of this litigation, and he would testify that he finds them to be "typical" for real estate loan transactions in Idaho. However, that the documentation appeared "typical" does not mean that the transaction itself was typical, a distinction that Latta acknowledged in deposition testimony. And Latta did not evaluate the transaction, just the documents. *See* Doc. No. 206-15 (Latta deposition excerpts) at 5–6, 15–17.[1]

The issue here is not one of qualifications or methodology. The problem instead falls under the threshold aspect of Fed. R. Evid. 702(a). That the documents used in the subject transaction were "typical" of real estate transactions generally does not assist or help the Court "to understand the evidence or to determine a fact in issue."

Defendant contends that the "typical" nature of the documents used to close the transaction could go to the question of Goldsmith's (or others') good faith.

---

[1] Page citations are to the Court's record, not the deposition pages.

MEMORANDUM OF DECISION - 5

But this does not require, nor benefit from, Latta's testimony, as an expert, on the "typical" nature of the documents. The question might be one of Goldsmith's experience, knowledge and familiarity with such documents (as well as other evidence on the question of good faith), but it is not whether in the abstract the documents appear typical to a banker without knowledge of the transaction.

Moreover, the Court is unpersuaded that the facial typicality of loan and closing documents, standing alone, imbues a transaction with any special characteristic of legitimacy or normalcy.[2]

The Court concludes Plaintiff's motion in limine is well taken as to Latta under Fed. R. Evid. 702(a). It will be granted, and the Court will enter an order accordingly.

### 2. Miller

Defendant's motion in limine seeks to exclude Plaintiff's witness, Gil Miller. Miller was retained to evaluate whether, and when, the DBSI enterprise was insolvent and/or exhibited the characteristics of a Ponzi scheme, and he prepared a report accordingly. Miller's qualifications are not challenged. Defendant challenges the relevance of his testimony and the reliability of his

---

[2] Defendant also argues that Latta's testimony and opinion as to the nature of the documents used informs the question of whether intermediate entities in the closing of the transactions were "conduits" (as Plaintiff contends). As with the "typicality" contention, the Court is unpersuaded that this argument overcomes the fundamental issue presented regarding Latta under Fed. R. Evid. 702(a).

MEMORANDUM OF DECISION - 6

methodology.

The Court has considered the arguments advanced. And, importantly, it has read carefully the March 3, 2015 decision of the District Court for the District of Idaho in *Zazzali v. Eide Bailly LLP*, Case No. 12-CV-349-MJP. *See* Doc. No. 283-5. In that decision, the District Court considered a similar, if not identical, challenge to Miller's expert testimony in DBSI-related litigation brought by Plaintiff. This decision is direct and to the point. It found that deficiencies in Miller's analysis alleged by Eide Bailly could be addressed on cross examination, and did not go to admissibility of Miller's opinions or his qualifications as an expert. *Id.* at 4. The District Court further ruled that:

> [T]he existence of a Ponzi scheme is a matter of disputed fact for the jury; meanwhile the application of the Ponzi presumption is a matter of law that follows on the factual finding of a Ponzi scheme. Thus, an expert may opine on either the existence of a Ponzi scheme or the characteristics the DBSI Companies shared with a Ponzi scheme with regard to the avoidance counts.

*Id.* at 5.[3]

---

[3] In *Johnson v. Neilson (In re Slatkin)*, 525 F.3d 805 (9th Cir. 2008), the Ninth Circuit noted that "the mere existence of a Ponzi scheme [is] sufficient to establish the actual intent to hinder, delay, or defraud creditors under 11 U.S.C. § 548(a) and California Civil Code § 3439.04(a), or another state's equivalent fraudulent transfer statute." *Id.* at 814 (citing *Barclay v. MacKenzie (In re AFI Holding, Inc.)*, 525 F.3d 700, 703 (9th Cir. 2008), and *Hayes v. Palm Seedlings Partners-A (In re Agric. Research & Tech. Grp., Inc.)*, 916 F.2d 528, 534–35 (9th Cir. 1990)). This has become generally known or characterized as the "Ponzi presumption." *See, e.g.*, *Brincko v. Rio Props., Inc. (In re Nat'l Consumer Mortg., LLC)*, 2013 WL 164247, *11 (D. Nev. Jan. 14, 2013); *Zazzali v. 1031 Exchange Grp. LLC (In re DBSI, Inc.)*, 476 B.R. 413, 421–22 (Bankr. D. Del. 2012); *Gowan v. The Patriot Grp., LLC (In re Dreier LLP)*, 452 B.R. 391, 424 (Bankr. S.D.N.Y. 2011); *Bear, Sterns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund*
(continued...)

For the same reasons articulated by the District Court, Defendant's motion to exclude Miller's testimony is found not well taken. As the District Court stated in regard to Eide Bailly's similar challenge, the "argument regarding the alleged deficiencies of Mr. Miller's analytical choices can be addressed on cross examination[.]" The Court will deny the motion and enter an order accordingly.

**B.    Plaintiff's Motion Regarding the Order of Trial**

**1.    Order of Trial**

Plaintiff asks the Court to enter a ruling that encompasses the following points regarding the process of trying phase II. Plaintiff would present its affirmative case to support the contention that the "Ponzi presumption" applies; Defendant would then presents its rebuttal or opposition case to the question of the Ponzi presumption's application; and the Court would then rule on the applicability of the Ponzi presumption. After that ruling, and depending on the nature of the ruling, Plaintiff would proceed to present evidence "as to any other issues." Defendant would present its case in opposition. Plaintiff would conclude with any rebuttal evidence.

Defendant characterizes Plaintiff's motion as resurrecting, or as being "virtually indistinguishable in substance and effect" from Plaintiff's earlier motion

---

[3] (...continued)
*Ltd.)*, 397 B.R. 1, 8 (S.D.N.Y. 2007).

MEMORANDUM OF DECISION - 8

for partial summary judgment which the Court denied. Doc. No. 282 at 3.[4] The Court disagrees. While there are clearly similarities, the procedural context is quite different. That summary judgment motion, Doc. No. 136, was denied by the Court, *see* Doc. No. 157, given the well-accepted restrictions on summary adjudication. As the Court noted, Defendant had previously tried twice to obtain summary judgment rulings. Neither was successful. Thus, in considering Plaintiff's motion for summary judgment, the Court noted that "What's past is prologue" and discussed the "limited utility of summary judgment motions when the facts are complex and in dispute[.]" Fundamentally, the Court's ruling at that time was on the use—and misuse—of summary judgment in complex litigation. This is something the Court has repeatedly addressed in its decisions, perhaps *ad nauseam*, though evidently to limited effect.

The Court's prior ruling on Plaintiff's summary judgment motion did not address the evidence nor the Ponzi presumption. The present motion is not, as Defendant's brief argues, "an improper second bite at the summary judgment apple, made on the eve of trial[.]" Doc. No. 282 at 4.

Defendant also seems to argue that this motion seeks or at least portends a

---

[4] Defendant's brief similarly suggests that Plaintiff's present motion "effectively seeks reconsideration of the Court's prior ruling upon the conduit theory[.]" *Id.* at 7. The reference is to a denial of Defendant's motion for partial summary judgment, Doc. No. 65. The Court, in its oral ruling on that motion, Doc. No. 77, ruled on the basis of summary adjudication being an inapt tool and declined to reach the merits.

MEMORANDUM OF DECISION - 9

*pretrial* ruling on the Ponzi presumption. It does not. It requests, rather, a ruling on the Ponzi presumption only after Plaintiff—and Defendant—present evidence going to the issue of the existence of, or the characteristics of, a Ponzi scheme. It is at least implicit (and the Court in any event would require) argument as to this issue after such evidence is presented. It is only following that presentation and argument, and the Court's factual findings, that the Ponzi presumption can be addressed as a matter of law.[5]

The Court disagrees with Defendant's argument that this approach to phase II of trial gives Plaintiff undue advantage, or an opportunity to present its case in chief twice. Nor does it require Defendant to present its entire defensive case in response to Plaintiff's initial presentation on the question of the presumption. Plaintiff must decide what to present in that initial stage, and what to reserve for later presentation, and Defendant has the opportunity to make the same sort of election.

The Court will grant the request as to the order of presentation at trial.

### 2. Admission of Documentary Evidence

Plaintiff also requests the Court enter, at this time, a ruling "finding that each of the documents attached to the Declaration of Mark B. Conlan, Esq.

---

[5] As noted above, the District Court stated in *Zazzali v. Eide Bailey* that the existence of a Ponzi scheme or the characteristics of a Ponzi scheme is a matter of disputed fact. If found, the application of the presumption is a matter of law. Doc. No. 283-5 at 5.

MEMORANDUM OF DECISION - 10

submitted herewith, including the Charging Documents and Conviction Documents [as defined by Plaintiff], is admissible in support of the Trustee's request for a finding that the Ponzi Presumption applies in this adversary proceeding[.]"  Doc. No. 277 at 2.

As this Court explained in its August 30 ruling, a motion in limine is "any motion whether made before or during trial to exclude anticipated prejudicial evidence before the evidence is actually offered."  *Luce v. United States*, 469 U.S. 38, 40 (1984).  Notwithstanding a court's "broad discretion" when addressing motions in limine, such motions "should not be used to resolve factual disputes or to weigh evidence" and, in order to exclude evidence on such a motion "the evidence must be inadmissible on all potential grounds."  *Gonzales v. Shotgun Nevada Invs., LLC*, 2017 WL 662485, *3 (D. Nev. Feb. 17, 2017).

Plaintiff does not by the present motion seek to *exclude* evidence but, rather, to gain a pretrial ruling *admitting* evidence.  This Court has not previously encountered such a request.  While the exclusion of evidence has often arisen, the use of a motion in limine to seek a ruling regarding admission is rare, at least insofar as reported cases are concerned.

*All. Fin. Capital, Inc. v. Herzfeld (In re Herzfeld)*, 2007 WL 7143395 (Bankr. N.D. Ga. Dec. 17, 2007), recognized that admission, as well as exclusion, could be considered.  It stated:

MEMORANDUM OF DECISION - 11

> A motion in limine is a tool that is prevalent in criminal law practice and is also useful in civil jury trials. Its purpose may be to admit, exclude, or limit the evidence presented to the trier of fact. A motion in limine made in a case where the trial judge is the trier of fact essentially asks the court to pass on the admissibility of evidence before the evidence has been tendered in the context of the trial. Many courts have agreed that motions in limine should only be granted sparingly, noting that the "better practice is to deal with questions of admissibility of the evidence as they arise." *See*, *e.g.*, *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Indeed, a ruling on a motion in limine is interlocutory and therefore subject to reconsideration by the Court at trial so its value to the litigants in determining trial strategy is limited.

*Id.* at *1.[6] A respected treatise notes:

> Motions in limine are used, among others, (1) to obtain a ruling admitting evidence, (2) to obtain a ruling excluding evidence, (3) to obtain a direction to opposing counsel and to witnesses called by opposing counsel not to bring certain matters to the attention of the jury, (4) to obtain a ruling requiring that a matter be raised with the court again at trial before being exposed to the jury in any form, and (5) to educate the court concerning a particular matter in the hope of obtaining a favorable ruling at trial if the court declines to rule upon the motion in limine in advance of the trial.

2 Hon. Barry Russell, Bankruptcy Evidence Manual, § 103.8 at 29 (2017–18 ed.).

Additionally, such "[a]dvance rulings, being introductory orders, are subject to reconsideration at trial. However, where counsel has reasonably relied upon the Court's ruling [*in*] formulating trial strategy, modification of the ruling at trial may

---

[6] It does not take much time or effort in research to realize the vast majority of reported cases considering motions in limine deal with motions to exclude, preclude, limit (etc.) the introduction of evidence. Few cases addressing pretrial admission through such motions have been located; even fewer of those are particularly helpful. *In re Lawrence*, 2008 WL 2095863 (Bankr. N.D.N.Y. May 16, 2008), is typical of judicial struggle with such requests, and ultimate rejection of such a motion.

MEMORANDUM OF DECISION - 12

constitute reversible error." *Id.* at 30.

After carefully considering the authorities, and the parties' arguments, the Court concludes that Plaintiff's request for pretrial admission of documents will be denied. The denial is without prejudice to offering such documents as exhibits at trial. Obviously, the Court will make no comments at this time as to the various arguments supporting or opposing admission, and will address the same, as necessary, at trial.

DATED: January 30, 2018

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 13